EQUAL EMPLOYMENT OPPOR-
TUNITY COMMISSION,
Plaintiff–Appellant,

v.

LOCAL 350, PLUMBERS AND
PIPEFITTERS, Defendant–
Appellee.

No. 90–16810.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 14, 1992.

Decided Dec. 22, 1992.

As Amended on Denial of Rehearing and
Rehearing En Banc April 12, 1993.

As Amended July 6, 1993.

John F. Suhre, E.E.O.C., Washington, DC, for plaintiff-appellant.

William J. Flynn, Neyhart, Anderson, Reilly & Freitas, San Francisco, CA, for defendant-appellee.

Before: FLETCHER, POOLE and BRUNETTI, Circuit Judges.

FLETCHER, Circuit Judge:

The Equal Employment Opportunity Commission ("EEOC") appeals the district court's grant of summary judgment in favor of Local 350, Plumbers and Pipefitters ("Local 350"). The EEOC brought suit to challenge Local 350's policy of refusing to allow retired members to seek work through Local 350's hiring hall while the members continued to receive pension benefits. We reverse.

## FACTS

Local 350 represents pipefitters and plumbers in Northern Nevada and parts of California. Together with industry employers, Local 350 operates a hiring hall. The hiring hall dispatcher keeps four "out of work lists", with different qualifications and priorities, from which members are hired. At issue in this case is list number 1, the "out of work list", reserved for persons who have been employed for at least 4,000 hours or more during the five years immediately preceding placement on the list. The dispatcher sends members out to jobs in the order in which they signed up.

Donald Pilot, a member of Local 350, retired in 1983. After retirement, he paid retired members' dues. In 1984, he decided to return to work, and signed onto the out of work list. Local 350 removed his name from the list, stating he was not eligible. In a letter dated April 20, 1984, Local 350 informed Pilot that, "as a 'retiree,' having applied for and been granted a pension, you are not presently eligible for dispatch through the UA Local 350 Hiring Hall." Local 350 informed Pilot that to be eligible to sign up for referral, he would have to cease receiving his pension. Pilot apparently continued to seek to sign up until as late as November, 1987.

In June, 1984, Pilot filed charges with the National Labor Relations Board ("NLRB") to challenge Local 350's policy. The NLRB refused to issue a complaint in the matter. A subsequent NLRB challenge filed by Pilot also did not result in NLRB action.

In December, 1987, Pilot filed a discrimination charge with the Nevada Equal Rights Commission and the EEOC. In June, 1989,

the EEOC filed an action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, on behalf of Pilot and similarly situated union members, seeking equitable relief, backpay, and liquidated damages. In May, 1990, the district court granted summary judgment in favor of Local 350. *EEOC v. Local 350, Plumbers and Pipefitters*, 741 F.Supp. 199 (D.Nev.1990). In August, 1990, it denied the EEOC's motion for reconsideration.

## STANDARD OF REVIEW

A grant of summary judgment is reviewed de novo. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 629 (9th Cir.1987). "A grant of summary judgment is reviewed de novo to determine whether, viewing the evidence in a light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the relevant substantive law." *Tzung v. State Farm Fire and Casualty Co.*, 873 F.2d 1338, 1339–40 (9th Cir.1989).

## DISCUSSION

I. Does the statute of limitations bar the EEOC's action?

While the district court granted summary judgment on the merits, Local 350 argues that its decision can be affirmed on the ground that the statute of limitations bars the EEOC's action. A suit alleging a violation of the ADEA must be brought within two years after the cause of action accrues; if a "willful" violation is at issue, the statute of limitations is three years. 29 U.S.C. § 255; 29 U.S.C. § 626 (section 255 applies to ADEA actions). Local 350 contends that Pilot was required to file suit within two, or, arguably at most three, years after Local 350 removed his name from the list in April, 1984.

### A. EEOC's suit for equitable relief

29 U.S.C. § 626(b) provides that, to enforce the ADEA, the EEOC may seek injunctive relief, as provided in 29 U.S.C. § 217, or may seek damages on behalf of an injured individual, as provided in 29 U.S.C.

§ 216. In its suit, the EEOC sought both types of relief from Local 350.

■■■■■■ With regard to injunctive relief, the EEOC need not rely on a charge by an individual to bring suit. "[T]he EEOC's role in combating age discrimination is not dependent on the filing of a charge; the agency may receive information concerning alleged violations of the ADEA 'from any source,' and it has independent authority to investigate age discrimination." *Gilmer v. Interstate/Johnson Lane Corp.*, —— U.S. ——, ——, 111 S.Ct. 1647, 1653, 114 L.Ed.2d 26 (1991), citing 29 C.F.R. §§ 1626.4, 1626.13 (EEOC has independent investigative authority and can secure relief for affected parties even if charging party makes a request to withdraw the charge). Thus, the EEOC was required to file suit within two (or three) years of the last date the challenged policy was in place. *Cf. Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.) ("[A] systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period."), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982). As the challenged policy remains in effect to this day, the EEOC's claim for injunctive relief is timely.

### B. Pilot's claim for monetary relief

■■■■ The EEOC's suit also asked that Local 350 be ordered to "make whole" Donald Pilot and similarly situated union members through payment of backpay and liquidated damages.

The EEOC also argues that Pilot can obtain monetary relief from the date he was first refused listing because Local 350's policy constitutes a "continuing violation" of the ADEA.

"Under the continuing violation doctrine, 'a systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period.'" *Sosa v. Hiraoka*, 920 F.2d 1451, 1455 (9th Cir.1990) (citation omitted). The doctrine is applied because "'the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period.'" *Id.* (citation omitted). When the doctrine is applicable, "no part of a continuing violation *which persists into the period within which suit is allowed* is time-barred." *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1310 (7th Cir.1989) (continuing violation doctrine in 42 U.S.C. § 1981 claims).

Here, Local 350's allegedly discriminatory policy was in effect when Pilot first encountered it in 1984, and remains in force today. Thus, under the continuing violation doctrine, relief for Pilot is not barred.

Local 350 suggests that two Supreme Court cases, *Lorance v. AT & T Technologies, Inc.*, 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989), and *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), require that we reject the EEOC's effort to rely on the "continuing violation" doctrine. Both cases, however, are distinguishable.

In *Evans*, in light of its policy against employing married flight attendants, an airline forced Evans, a flight attendant, to resign in 1968, when she married. The policy subsequently was found to violate Title VII. Evans was refused reinstatement, but was eventually rehired as a new employee. Because she was given no seniority credit for her pre–1968 service, she filed suit under Title VII, alleging that the facially neutral seniority system discriminated against her. The Supreme Court held that she should have filed suit in 1968, when the discrimination against her took place. 431 U.S. at 557, 97 S.Ct. at 1888–89. The Court found she could not rely on the continuing violation doctrine. The airline was not engaged in any current violation of Title VII: "Nothing alleged in the complaint indicates that United's seniority system treats existing female employees differently from existing male employees, or that the failure to credit prior service differentiates in any way between prior service by males and prior service by females." *Evans*, 431 U.S. at 557–58, 97 S.Ct. at 1888–89. The Court acknowledged that the "seniority system does indeed have a continuing impact on her pay and fringe benefits. But the emphasis should not be placed

on mere continuity; the critical question is whether any present *violation* exists." *Id.* at 558, 97 S.Ct. at 1889.

In *Lorance,* the Court considered the issue of "when the limitations period begins to run in a lawsuit arising out of a seniority system not alleged to be discriminatory on its face or as presently applied." *Lorance,* 490 U.S. at 903, 109 S.Ct. at 2264. In 1982, a group of women employees were demoted as a result of layoffs; they were selected for demotion because of the way in which seniority was calculated. They filed suit in 1983, alleging that a facially neutral seniority system, instituted in 1979, discriminated against them because it was based on seniority in a position that had, until recently, been held almost exclusively by men. The Supreme Court held that the employees' suit was time-barred: the proper time to challenge the seniority system was when the new seniority system was instituted, and their rights were diminished.[1] The employees' claim was "in essence a claim of intentionally discriminatory *alteration* of their contractual rights." *Id.* at 905, 109 S.Ct. at 2265. The Court emphasized, however, that the employees "do not allege that the seniority system treats similarly situated employees differently or that it has been operated in an intentionally discriminatory manner." *Id.* "There is no doubt, of course, that a facially discriminatory seniority system (one that treats similarly situated employees differently) can be challenged at any time, and that even a facially neutral system, if it is adopted with unlawful discriminatory motive, can be challenged within the prescribed period after adoption." *Id.* at 912, 109 S.Ct. at 2269 (footnote omitted).

Here, the EEOC is not challenging a "facially neutral" system. Rather, it is attacking a policy which accords different treatment to employees who have been out of work because they had retired, from that accorded to those who have been out of work for some other reason. The former are required to give up alternative sources of income while they are on the referral list; the latter are not. At issue here is not the continuing impact of an act taken long ago, but rather ongoing differential treatment of similarly situated employees. Both *Evans* and *Lorance* explicitly stated that the limitations imposed on the time for filing a discrimination action do not apply where the plaintiff is challenging a facially discriminatory policy. *See Lorance,* 490 U.S. at 912, 109 S.Ct. at 2269; *Evans,* 431 U.S. at 557–58, 97 S.Ct. at 1888–89; *Pallas v. Pacific Bell,* 940 F.2d 1324, 1327 (9th Cir.1991) (refusing to apply *Evans* and *Lorance* where plaintiff attacked employer's length of service system as facially discriminatory against women who took leave for pregnancy-related disabilities), *cert. denied,* —— U.S. ——, 112 S.Ct. 916, 116 L.Ed.2d 815 (1992).

Thus, *Evans* and *Lorance* do not undermine the EEOC's "continuing violation" theory; the claim for monetary relief for Pilot is not time-barred.

## II. Does 29 U.S.C. § 623(f)(2) bar review of Local 350's policy?

■ Local 350 argues that its policy is protected by the prior version of 29 U.S.C. § 623(f)(2), which provided that it shall not violate the ADEA:

> to observe the terms of a bona fide seniority system or any bona fide employee benefit plan such as a retirement, pension, or insurance plan, which is not a subterfuge to evade the purposes of this chapter, except that no such employee benefit plan shall excuse the failure to hire any individual, and no such seniority system or employee benefit plan shall require or permit the involuntary retirement of any individual specified by section 631(a) of this title because of the age of such individual;

29 U.S.C. § 623(f)(2). That section has been superseded by subsequent amendment.

We find the statute irrelevant in that it is the denial of employment opportunities, not Local 350's seniority system or benefits plan, that is at issue. Retired members of Local 350 are not allowed to sign the out of work

---

1. A district court in this circuit has noted that *Lorance* has been legislatively overruled by the 1991 Civil Rights Act. *See Stender v. Lucky Stores, Inc.,* 780 F.Supp. 1302, 1305 n. 11 (N.D.Cal.1992).

646

list while they are receiving pension benefits from the union. This prohibition, although keyed to receipt of a pension, does not transform the Union's hiring hall policies into provisions of a pension plan. Local 350's argument in this regard is simply specious.

Thus, section 623(f)(2) does not bar review of Local 350's policy.

## III. Does Local 350's policy violate 29 U.S.C. § 623(c)(2)?

■ The EEOC claims that Local 350's policy violates 29 U.S.C. § 623(c)(2) because it discriminates against older workers. The district court did not decide this issue, but rather found that even if the policy were discriminatory, Local 350 could successfully rely on the affirmative defense set forth in 29 U.S.C. § 623(f)(1).

Section 623(c)(2) provides:

It shall be unlawful for a labor organization—

(2) to limit, segregate, or classify its membership, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age[.]

29 U.S.C. § 623(c)(2).

"[A]n employer discriminates 'because of' age whenever age is a 'but for' cause of discrimination." *EEOC v. Borden's, Inc.*, 724 F.2d 1390, 1393 (9th Cir.1984). In *Borden's*, when the employer closed a plant, it gave severance pay to the plant's employees; however, employees who were eligible for retirement benefits were not given severance pay. This court held that "[a]ge was a 'but for' cause or necessary condition for the denial of severance pay to Borden's retireable employees since only employees 55 or older were eligible for retirement." *Id.*

Under this analysis, Local 350's policy discriminates on the basis of age. On its face, it discriminates only against retired employees; however, only employees 55 or older are eligible to retire. There is thus a very close

connection between age and the factor on which discrimination is based. *See, e.g., Borden's*, 724 F.2d at 1393; *EEOC v. Westinghouse Elec. Corp.*, 725 F.2d 211, 222 (3d Cir.1983) (discussing "close relationship" between early retirement and age), *cert. denied*, 469 U.S. 820, 105 S.Ct. 92, 83 L.Ed.2d 38 (1984); *cf. Leftwich v. Harris–Stowe State College*, 702 F.2d 686, 691 (8th Cir.1983) (employer's selection plan based on tenure status was discriminatory "because of the close relationship between tenure status and age").

Local 350 argues that the policy is not discriminatory because the "but for" cause of discrimination is not the retiree's age but his voluntary decision to retire and remain retired. This argument is unavailing. First, as *Borden's* suggests, we have been unwilling to draw so fine a line when determining causation. Moreover, the very "choice" Local 350 identifies is discriminatory. Only retired, older employees need decide whether to remain retired and forego alternative sources of income while they seek work as pipefitters; younger workers need not choose between receiving unemployment benefits or holding another job and placing their names on Local 350's list. Younger employees who have "chosen" not to work as pipefitters for some time for whatever reason are not penalized in the same way as retired workers.

Thus, Local 350's policy violates Section 623(c)(2) because it refuses to refer certain employees for work on the basis of a factor very closely related to age. Because the policy discourages retired employees from seeking to return to the workforce, it frustrates the ADEA's goal of promoting the employment of older persons based on their ability rather than age.

## IV. Was Local 350's policy based on "reasonable factors other than age" within the meaning of 29 U.S.C. § 623(f)(1)?

■ The district court awarded summary judgment in favor of Local 350 because the union had established an "exemption from liability" pursuant to 29 U.S.C. § 623(f)(1). That section provides:

It shall not be unlawful for an employer, employment agency, or labor organization—

> (1) to take any action otherwise prohibited under subsections (a), (b), (c), or (e) of this section where age is a bona fide occupational qualification reasonably necessary to the normal operation of the particular business, or where the differentiation is based on reasonable factors other than age....

29 U.S.C. § 623(f)(1). The district court was wrong. Neither the proposed factors cited by the district court in its opinion, nor the additional factors suggested by Local 350, are viable, non-age-based reasons for its policy.

The district court reasoned:

> Defendant's hiring hall policy is intended to help out-of-work members obtain employment. The policy does not bar retired members from using the hall, rather, it bars retired members receiving a pension from using the hall. These retired members may use the hiring hall for the period that they elect not to receive pension benefits. In essence, the defendant's policy merely states that retired members receiving a pension are not "out-of-work," and are therefore not eligible to use the hiring hall.

741 F.Supp. at 201. This proposed justification fails because it rests on pension receipt, a status closely related to age. "A retired member receiving a pension"—a member necessarily aged 55 or older—is treated differently from other members seeking employment, for example, from a member drawing unemployment benefits or a member employed in another trade.

Local 350 proposes several additional supposedly non-age based factors cited by Local 350 business manager George Foster in his declaration. It argues that it needs to preserve work opportunities for its members. It suggests that a flood of retirees returning to work would result in long periods of unemployment for non-retired members who would otherwise get work. However, it is hard to see why Local 350's management of employment opportunities should be carried out by requiring retirees to forego their pensions before being allowed to sign up for work. Once again, the proposed factor seems to embody the very discrimination that is the subject of this suit. If preventing retirees from reentering the working force is the rationale (which it could not be, under the ADEA), no retirees should be allowed to sign up. Moreover, as the EEOC notes, the Local had fewer than 130 retired members in 1990 and since 1981 only a handful have sought to return to work.

██ Local 350 also argues that retirees who return to work would quit after 39 hours of employment in a month to preserve their pension benefits. It suggests this would cause problems for employers who want to retain employees for the duration of the project for which they are hired. However, this "no short term work" policy apparently applies only to pensioned retirees seeking to return to work. Local 350 does not suggest that other unemployed workers are required to commit to any minimum time on the job. Moreover, if an employer is dissatisfied when a retiree quits after working only a limited time on its job, it can refuse to hire that retiree in the future.

Local 350 finally "points to the basic unfairness of allowing one group of unemployed workers to collect a pension while on the 'out-of-work' list while others go unsubsidized." Local 350 notes that, unlike other unemployed workers, retirees may be eligible for both unemployment insurance and pension benefits, and are benefitting from a lifetime, not a limited, stipend. However, many retirees cannot simultaneously collect both unemployment and pension benefits. *See* Nev.Rev.Stat. § 612.375 ¶ 2 (reduction of unemployment benefits for certain persons receiving pension payments). As to the other part of the argument, it is hard to see how the "lifetime" versus "temporary" subsidy distinction justifies Local 350's policy. First, it is once again an age-related distinction: generally, only older workers will have "lifetime" stipends. Moreover, if Local 350 believes it is unfair for "subsidized" workers to enjoy the benefits of its list, it should refuse to allow unemployed workers on the list for as long as they can draw unemployment benefits.

██ Because neither the reason proposed by the district court nor the justifica-

tions presented by Local 350 satisfy the requirements of section 623(f)(1), we find the district court erred in concluding that this defense protected Local 350's policy. We thus reverse the grant of summary judgment in favor of Local 350.[2]

REVERSED.

2. Local 350 has requested that we hold the mandate and reconsider the denial of rehearing in this case in light of the Supreme Court's recent decision in *Hazen Paper Co. v. Biggins,* —— U.S. ——, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). *Hazen* sets forth the parameters of disparate treatment in the age discrimination context, while expressly leaving open the question whether disparate impact claims are cognizable under the ADEA. *See id.* —— U.S. at —— – ——, 113 S.Ct. at 1706–07. We perceive no conflict between *Hazen* and our decision in this case.

The EEOC does not specify in its pleadings or briefs on appeal whether it is proceeding under a disparate treatment or disparate impact theory of discrimination. Because in this circuit a plaintiff may challenge age discrimination under a disparate impact analysis, both theories were potentially available to the EEOC. *See EEOC v. Borden's Inc.,* 724 F.2d 1390, 1392 (9th Cir.1984). The EEOC's complaint concerns an employment practice that is "facially neutral . . . but that in fact fall[s] more harshly on one group than another and [assertedly] cannot be justified by business necessity," and seeks relief for an entire class of workers in addition to the named complainant. It is therefore cognizable as a disparate impact challenge. *Hazen,* —— U.S. at ——, 113 S.Ct. at 1705 (quoting *Teamsters v. United States,* 431 U.S. 324, 335 n. 15, 97 S.Ct. 1843, 1854 n. 15, 52 L.Ed.2d 396 (1977)); *Borden's,* 724 F.2d at 1392.

The violation alleged by the EEOC may also fall within *Hazen's* definition of disparate treatment. A disparate treatment claim is made out where the plaintiff can show that an employer treated him differently because of his age. In such a case, "[p]roof of discriminatory motive is critical, although it can in some situations be inferred from the mere fact of differences in treatment." *Hazen,* —— U.S. at ——, 113 S.Ct. at 1705 (quoting *Teamsters,* 431 U.S. at 335 n. 15, 97 S.Ct. at 1854 n. 15). As *Hazen* explains, [i]n a disparate treatment case, liability depends on whether the protected trait . . . actually motivated the employer's decision.

. . . .

We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination.  Pension status may be a proxy for age ... in the sense that the employer may suppose a correlation between the two factors and act accordingly. —— U.S. at ——, ——, 113 S.Ct. at 1706, 1707.

On remand, the district court should direct the EEOC to articulate its theory or theories of discrimination·in accordance with the principles set forth in *Hazen.*