Filed 5/29/14  Feng v. Office of Statewise Health, Planning and Development CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| BING-NAN FENG, | B248519 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC475805) |
| v. | |
| OFFICE OF STATEWIDE HEALTH PLANNING AND DEVELOPMENT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Joseph R. Kalin, Judge.  Affirmed.

The Law Offices of Craig T. Byrnes and Craig T. Byrnes for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Celine M. Cooper, Bruce W. Reynolds, and Michael Yi, Deputy Attorneys General for Defendant and Respondent.

_____

**INTRODUCTION**

Bing-Nan Feng appeals from a judgment dismissing his complaint of age discrimination, after the superior court entered a directed verdict in favor of respondent Office of Statewide Health Planning and Development (OSHPD). Feng contends there was sufficient evidence showing that his age was a substantial motivating factor in the decision not to hire him, as the decisionmaker expressed concern that Feng recently had retired and would retire again soon. We conclude that it was not improper for the decisionmaker to consider Feng's prior retirement, as his retirement status was not a proxy for age under the circumstances of this case. Accordingly, we affirm.

**PROCEDURAL HISTORY**

On February 3, 2012, Feng filed a complaint for monetary damages, alleging (1) age discrimination in violation of the Fair Employment and Housing Act (FEHA), Government Code section 12940, subdivision (a),[1] and (2) failure to prevent age discrimination in violation of section 12940, subdivision (k). In his complaint, Feng alleged that he worked as a senior structural engineer for OSHPD for 12 years and retired in December 2004. In 2009, at the age of 68, he decided to return to work. He applied for an open position as a senior structural engineer. Allegedly in substantial part due to his age, however, OSHPD decided to hire a much younger individual (Nicholas Strenk, who was 40) for the job, even though Feng was far more qualified.

On March 2, 2012, OSHPD filed an answer, generally denying the allegations and raising eight affirmative defenses. On January 22, 2013, OSHPD

---

[1] All further statutory citations are to the Government Code, unless otherwise stated.

2

filed an amended answer adding the affirmative defense that it would have made the same hiring decision based on legitimate, nondiscriminatory reasons.

A jury trial began March 12, 2013. On March 19, 2013, Feng dismissed his second cause of action for failure to prevent age discrimination. That same day, the parties completed their presentation of evidence. OSHPD then moved for a directed verdict pursuant to Code of Civil Procedure section 630, arguing that Feng had not shown that age was a substantial motivating factor in the hiring decision, and that OSHPD had legitimate, nondiscriminatory reasons to hire Strenk. The trial court granted the motion, and on April 25, 2013, entered a judgment in favor of OSHPD. Feng timely appealed.

## FACTUAL BACKGROUND AND TRIAL TESTIMONY

OSHPD is one of 13 departments under the State of California's Health and Human Resources Agency. OSHPD has six divisions, including the facilities development division (FDD). FDD is responsible for plan review and construction of healthcare facilities, including skilled nursing facilities throughout the state. FDD is organized into different work regions. At all relevant times, Ramin Sadr was the regional supervisor for the North Los Angeles region of FDD.

In 2009, due to pending deadlines for seismic retrofitting of healthcare facilities, the Legislature provided FDD with funding for 31 positions. However, the Governor imposed a freeze on hiring and promotion, and required FDD to eliminate retired annuitant and student assistant positions and suspend FDD's contracts with outside vendors. However, FDD was able to get a time-limited freeze exception for a senior structural engineer in Sadr's region. Individuals interested in the position were required to take an initial exam and send their applications to OSHPD's human resources office in Sacramento for screening.

3

Under applicable state laws, only applicants scoring in the first three ranks on the initial exam could be hired. As a former senior structural engineer with OSHPD, Feng was automatically eligible to be hired for the position without having to take the initial exam. He could apply and compete for the position, but had no entitlement to it.

As chairperson, Sadr selected the candidates who would be interviewed by the hiring panel. The panel consisted of Sadr, two structural engineers, Brett Beekman and David Neou, and a human resources person, Linda Janssen. Although the other panelists could provide their input, Sadr had sole discretion on whom to hire. Sadr selected seven candidates, including Feng and Strenk. During the job interview, Feng did not state that he had made a mistake retiring. Nor did he explain why he wanted to return to OSHPD.

Feng had the highest aggregate score on the interview, and Strenk had the second highest aggregate score. It was not uncommon for someone other than the highest scoring applicant to be hired. Based upon the panelists' personal experience, the highest-scoring candidate did not receive a job offer 25 percent to 50 percent of the time. Nor was the chairperson restricted to hiring the top three candidates. Janssen, who had participated in approximately 30 job interviews, recounted an instance where the 12th ranked person was hired.

After the interview was completed, the panel members discussed the candidates. Beekman and Neou thought that Strenk had greater potential than all the other candidates because of his education and work experience. Strenk graduated from Cornell University, which had a prestigious engineering program. Unlike Feng, Strenk also had an MBA and a minor in geotechnical engineering. The expertise of geotechnical engineers, who analyze and address the impact of soil conditions on structures, was highly valued by FDD.

Strenk had worked for John A. Martin and Associates (JAMA), a major contractor for FDD, from 2000 to 2008. From his time at JAMA, Strenk was familiar with OSHPD and FDD, and their systems and procedures. Strenk also had experience in all phases of building design and construction, including field work to ensure the work was constructed according to the design plans.

After leaving JAMA, Strenk worked for iCrete, a startup company focused on producing concrete mixes. He was at iCrete for five months, before being laid off when the company experienced financial difficulties. Strenk then worked for the City of Santa Monica's maintenance management division. The division had responsibility for maintaining the city's facilities, which included a pier and an airport. Strenk was let go -- "separated on probation" -- after nine months because the city eliminated his position due to budget shortfalls. Sadr testified he confirmed this account by calling the city supervisor.

Sadr found Strenk very pleasant and open, and thought he communicated well during the interview. Sadr believed that he would work better with Strenk than Feng. Strenk was also the only candidate who received recommendations. Both Beekman and "Traylor" Martin, the president of JAMA, had recommended Strenk for the position. Strenk was interested in working for OSHPD, and had previously applied. He planned to work at FDD until he retired.

As to Feng, Sadr expressed concern that Feng, who had retired from OSHPD in 2004 and had returned as a part-time retired annuitant from 2004 to 2007, would retire again and soon. Sadr was concerned that if Feng retired, he would have to go through the very costly and lengthy hiring process again. Sadr also was concerned that he would not be able to fill the position vacated by Feng's retirement if the hiring freeze persisted. Even were the freeze lifted, it could take

5

up to six months to replace a senior structural engineer, and in the interim, FDD's projects would be delayed due to the lack of structural engineers.

Sadr did not know the ages of the candidates, and he testified he never considered their ages in determining whom to hire. Their applications and resumes did not contain their ages or birthdates. Sadr never expressed to the other panelists concern that Feng's age made it more likely that he would retire again. Nor did Sadr say that he would not hire Feng because of his age. Although Sadr expressed concern that Feng might retire again soon, he did not consider that fact a bar to hiring Feng. Indeed, on the list of Sadr's preferred candidates for the position, Feng was ranked second. Had Strenk refused the job offer, Sadr was prepared to offer the position to Feng.

Sadr stated that based on Strenk's qualifications and personal characteristics, he would have hired Strenk even absent concerns about Feng's retiring again. When asked to explain why he initially had given a different answer during his deposition, Sadr stated that he had misunderstood the question and had subsequently corrected his answer during the deposition.

Sadr supervised several engineers who were in their 60s. He recounted that when one of the engineers he supervised, who was 85, wanted to retire, Sadr had talked him out of it, as he was a highly valued employee.

## DISCUSSION

A.    *Standard of Review*

"A directed verdict may be granted only when, disregarding conflicting evidence, giving the evidence of the party against whom the motion is directed all the value to which it is legally entitled, and indulging every legitimate inference from such evidence in favor of that party, the court nonetheless determines there is

6

no evidence of sufficient substantiality to support the claim or defense of the party opposing the motion, or a verdict in favor of that party. [Citations.]" (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 629-630.) We review de novo whether sufficient evidence was presented to withstand a directed verdict. (*Magic Kitchen LLC v. Good Things Internat., Ltd.* (2007) 153 Cal.App.4th 1144, 1154.)

B.    *Age Discrimination*

Section 12940 prohibits an employer from refusing to hire or employ a person on account, among other grounds, of his age. Here, there is no direct evidence that Feng was not hired because of his age. Sadr's uncontradicted testimony was that he hired Strenk instead of Feng, based on Strenk's impressive credentials and personal characteristics. Moreover, Sadr did not know the ages of the candidates, and he never told the other panelists that he would not hire Feng because of his age. Nor is there any evidence that Sadr made remarks indicating animus towards the elderly. (Cf. *Reeves v. Sanderson Plumbing Prods.* (2000) 530 U.S. 133, 151 [defendant not entitled to judgment as a matter of law on age discrimination claim where decisionmaker told plaintiff he "'was so old [he] must have come over on the Mayflower'" and he "'was too damn old to do [his] job'"].) Indeed, Sadr supervised several engineers in their 60s, and persuaded an 85-year-old engineeer to delay retirement and continue working for FDD.

Feng's evidence of discriminatory animus consists of (1) the fact that he was not hired although he had the highest aggregate score on the job interview and was qualified for the position, and (2) Sadr's expressed concern that Feng had retired in 2004 and might retire again soon. It is undisputed, however, that the highest scoring candidate frequently does not receive a job offer. More important, the interview score is only one factor among many for the hiring manager to consider

in determining who would be the best candidate for the job. No one disputes that Strenk was qualified for the position. Strenk had impressive educational credentials, varied work experience, familiarity with OSHPD and FDD, good communications skills, recommendations from trustworthy individuals, and the second highest aggregate score on the job interview. Feng's qualifications, including his prior service at OSHPD, were not so superior as to make the selection of Strenk unreasonable. Thus, the selection of Strenk, standing alone, does not raise an inference of discriminatory animus. (See *Byrnie v. Town of Cromwell Bd. of Education* (2d Cir. 2001) 243 F.3d 93, 103 [for discrepancy in qualifications to show unlawful discrimination, "the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that 'no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question'"], quoting *Deines v. Texas Dept. of Protective and Regulatory Servs.* (5th Cir. 1999) 164 F.3d 277, 280-281.)[2]

As to Feng's prior retirement, section 12940, which governs hiring decisions, does not mention retirement status. (See § 12940 [employer prohibited from considering race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status].) Accordingly, there is no statutory prohibition against considering retirement status in a hiring decision.

---

[2] Because the federal anti-discrimination legislation and the FEHA address similar concerns, California courts may look to federal cases interpreting such legislation to aid in the interpretation of the FEHA. (*Hersant v. Department of Social Services* (1997) 57 Cal.App.4th 997, 1002, fn. 1 (*Hersant*).)

Feng contends, however, that his retirement status was used as a proxy for his age. We disagree. In determining whom to hire, an employer may properly consider legitimate, nondiscriminatory factors, even if that factor is correlated with age. The United States Supreme Court's decisions in *Hazen Paper Co. v. Biggins* (1993) 507 U.S. 604 (*Hazen Paper*) and *Smith v. City of Jackson* (2005) 544 U.S. 228 (*Smith*) are instructive. In *Hazen Paper*, the court noted that the Age Discrimination in Employment Act of 1967 (ADEA) was prompted by Congressional concern that older workers were being deprived of employment on the basis of "inaccurate and stigmatizing stereotypes." The ADEA forbids employers from relying on an employee's age as a proxy for characteristics such as productivity and competence. Rather, the employer must focus on those factors directly. (*Hazen Paper*, at pp. 610-611.) The court held that when an employer's decision is motivated wholly by factors other than age -- even if the motivating factor is correlated with age, such as pension status -- there is no liability under the ADEA. (*Id.* at pp. 611-612 [employer's decision to terminate older employee solely because he had nine-plus years of service and therefore his pension was about to vest not discriminatory treatment on the basis of age]; see also *Kentucky Retirement Systems v. EEOC* (2008) 554 U.S. 135, 143-144 [employer's pension plan allowing vesting after 20 years of service or after the employee attained five years of service and reached the age of 55 did not violate the ADEA, as "age" and "pension status" are "'analytically distinct'" concepts and "several background circumstances eliminate[d] the possibility that pension status . . . nonetheless serv[ed] as a 'proxy for age'"].)

Similarly, in *Smith*, the court held that an employer's pay plan did not violate the ADEA even though older workers received comparatively smaller pay increases, because the decision to grant a larger raise to lower echelon employees

9

was based on a "'reasonable facto[r] other than age.'" (*Smith*, *supra*, 544 U.S. at p. 242.) Although the plan was based on an employee's seniority and position -- factors correlated with age -- the court found no liability, because the pay differential was based upon a legitimate, nondiscriminatory reason, viz., the employer's "perceived need to raise the salaries of junior [employees] to make them competitive with comparable positions in the market." (*Ibid*.)

Here, although retirement status is correlated with age, the record shows that Feng's retirement status was not used as a proxy for his age. Rather, the uncontradicted evidence was that Sadr was concerned that Feng, who had voluntarily left his senior structural engineer position with OSHPD in 2004, might soon do so again. Sadr did not want to go through the costly and lengthy hiring process again, was concerned that he might not be able to fill Feng's vacated position if the hiring freeze persisted, and did not want to delay FDD's ongoing projects due to the dearth of structural engineers. These are all legitimate, nondiscriminatory reasons.

At no time was Sadr's consideration of Feng's prior retirement untethered to his concern that Feng, having voluntarily left OSHPD before, would soon do so again. As Feng never expressed regret at retiring, nor explained why he wanted to return to OSHPD, Sadr's concerns were neither irrational nor unreasonable. Moreover, Sadr never considered Feng's retirement status per se. He never stated that he would not hire Feng because Feng was a retiree; indeed, he was prepared to offer the job to Feng if Strenk refused. Finally, Sadr made no comments about retirees or Feng that could be interpreted as "inaccurate and stigmatizing stereotyping" of the elderly. He did not suggest that retirees lacked the energy to perform the duties of a senior structural engineer, or in any way imply that Feng's status as a retiree would compromise his ability to perform the job.

10

Feng's reliance on *EEOC v. Local 350, Plumbers & Pipefitters* (9th Cir. 1992) 998 F.2d 641 is misplaced.  There, a union had a policy of refusing to allow retired members to seek work through the union's hiring hall while receiving pension benefits.  (*Id*. at p. 643.)  The Ninth Circuit found the policy violated the ADEA because it discriminated based on a factor -- retirement -- closely related to age, and "it frustrate[d] the ADEA's goal of promoting the employment of older persons based on their ability rather than age."  (*Id*. at p. 646.)  In contrast, here, OSHPD had no policy prohibiting retirees from seeking open positions.  Indeed, OSHPD made it easier for retirees to apply for open positions.  For example, OSHPD had a policy exempting Feng, who had been a senior structural engineer, from having to take the initial exam for the position.  OSHPD also hired retirees; it hired Feng as an annuitant after he retired.  More important, Sadr did not categorically exclude retirees from consideration for the open position.  Sadr himself selected Feng as a candidate for the position, and ranked him second overall.  In short, nothing suggests that OSHPD as an organization, or Sadr as an individual, discriminated against Feng or other retirees due to age-related concerns.  On this record, we conclude that Sadr's consideration of Feng's prior retirement was not discrimination based on age.[3]

As Feng's retirement status was not a proxy for age discrimination, there is no evidence of a discriminatory motive in the hiring decision.  Accordingly, Feng's age discrimination claim is analyzed under the burden shifting test enunciated in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 802-804 (*McDonnell*

---

[3]      As we conclude that Sadr could properly consider Feng's prior retirement, we need not address the admissibility and evidentiary weight of Sadr's correction to his deposition answer that Feng's prior retirement was a "but for" reason for the hiring decision.

11

*Douglas*).  (*Sandell v. Taylor-Lustug, Inc*. (2010) 188 Cal.App.4th 297, 307.)[4]
Under the three-stage test in *McDonnell Douglas*, (1) the plaintiff must first make a prima facie case of employment discrimination; (2) the burden then shifts to the employer to proffer a legitimate, nondiscriminatory reason for its employment action; and (3) the plaintiff must then present substantial evidence that the proffered reason was false, or present evidence of a discriminatory animus or a combination of the two, such that a reasonable trier of fact could conclude that the employer engaged in employment discrimination.  (*Hersant*, *supra*, 57 Cal.App.4th at pp. 1003-1004.)  At trial, OSHPD did not dispute that appellant had made a prima facie case for age discrimination, as (1) he was a member of a protected class (over 40 years old), (2) he was qualified for the senior structural engineer position, and (3) he was not hired.  (See *Guz v. Bechtel National, Inc*. (2000) 24 Cal.4th 317, 355 [listing elements of an employment discrimination claim under the FEHA]; *Hersant*, *supra*, at p. 1003 [listing elements of a claim for termination due to age].)

OSHPD, however, proffered several legitimate, nondiscriminatory reasons for hiring Strenk instead of Feng.  First, Sadr evaluated Strenk as having better educational credentials (Cornell University engineering degrees, minor in geotechnical engineering, MBA) and personal characteristics (pleasant, open, and communicated better).  Second, Sadr was concerned that if offered the position,

---

[4]    Although the trial court used the "substantial motivating factor" test to analyze Feng's age discrimination claim, that test is applicable only to mixed motive cases, viz., cases where the evidence demonstrates or a defendant concedes that an employment decision was based in part on a discriminatory motive and in part on a legitimate, nondiscriminatory motive.  (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232.)  As explained above, Sadr's concern that Feng would soon retire again did not evidence a discriminatory motive.  Accordingly, this is not a mixed motives case.

Feng might voluntarily leave again as he had done before. He had no such concern with Strenk.

Feng presented no substantial evidence that these reasons were false.[5] He contends his qualifications were so superior to Strenk's that it was unreasonable for Sadr to select Strenk as the top candidate. We disagree. It is uncontradicted that Sadr had a high opinion of Cornell University's engineering program, and that he had no knowledge of Feng's undergraduate institution. Similarly, it is uncontradicted that Sadr observed the candidates during the interview and determined that Strenk had better communication skills than Feng.[6] Sadr further determined that both Feng and Strenk had valuable work experience, were familiar with OSHPD's procedures, and had knowledge of recent building codes. As both men were qualified for the position, nothing about Sadr's preference for Strenk based on his perceived superior educational credentials and communication skills was shown to be pretextual. Moreover, no evidence suggests that Sadr's consideration of education credentials and communications skills reflected

---

[5] Feng contends that the court improperly excluded the deposition testimony of Doris Bloom, chief of human resources for OSHPD, that during her training, she was told that discrimination against retirees constituted age discrimination. We find no error, as Bloom's deposition testimony is an improper opinion on a legal issue. As explained above, discrimination against retirees is not always age discrimination. In any event, there was no evidence that Sadr received similar training.

Feng also summarily contends that the trial court made other erroneous evidentiary rulings that prejudiced him. As he failed to develop this argument, it is forfeited. (*Okasaki v. City of Elk Grove* (2012) 203 Cal.App.4th 1043, 1045, fn.1; 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 701, p.769.)

[6] Feng's reliance on Janssen's scoring of the oral part of the job interview is unavailing. Janssen did not rate the candidates' communication skills. In any event, Sadr was the sole decisionmaker.

negative stereotypes of the elderly. Thus, Feng presented no substantial evidence that OSHPD's first reason for hiring Strenk -- his qualifications -- was false, much less that the true reason was age discrimination.

Similarly, Feng presented no substantial evidence that OSHPD's second reason for hiring Strenk -- that Strenk would stay and grow with OSHPD -- was false. Feng's only evidence of pretext was Strenk's short time at his last two jobs. He argues that Sadr's concerns about losing a senior structural engineer and going through the time and expense to hire a new engineer would apply equally to Strenk if he also had an inclination to voluntarily leave his employment quickly after being hired. However, Strenk's uncontradicted testimony was that he did not leave his last two jobs voluntarily. Rather, he was laid off from iCrete and let go from the City of Santa Monica due to financial problems and budget shortfalls, respectively.

Finally, Feng presented no evidence of discriminatory animus. As discussed, there is no evidence that Sadr discriminated on the basis of age. Nor is there any evidence that other older workers or retirees experienced age discrimination at OSHPD, or suffered an adverse disparate impact from OSHPD's hiring process. Thus, Feng has produced no evidence from which a reasonable trier of fact could find that Sadr or OSHPD engaged in age discrimination. Accordingly, the trial court did not err in granting OSHPD a directed verdict.

14

**DISPOSITION**

The judgment is affirmed.  Respondent is entitled to its costs on appeal.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.**




MANELLA, J.


We concur:



EPSTEIN, P. J.



EDMON, J.*




_____
* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.