119 F.3d 102
 74 Fair Empl.Prac.Cas. (BNA) 522,
71 Empl. Prac. Dec. P 44,832,
21 Employee Benefits Cas. 1933
David M. CRILEY; Ronald G. Fitch; David E. Jones;
Constantine G. Vlahakis, individually and on
behalf of all other persons similarly
situated, Plaintiffs-Appellants,
v.
DELTA AIR LINES, INC.; Air Line Pilots Association
International, Defendants-Appellees.
 No. 175, Docket 96-7110.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 27, 1996.
Decided July 11, 1997.
 
 Leonard N. Flamm, New York City (Norman Mednick and Maria D. Beckman, New York City, On the Brief), for Plaintiffs-Appellants.
 William H. Boice, Atlanta, GA (Stephen E. Hudson, Kilpatrick & Cody, Atlanta, GA., On the Brief; Stuart H. Bompey and Ira G. Rosenstein, Orrick, Herrington & Sutcliffe, New York, N.Y., Of Counsel), for Defendants-Appellees.
 Before: WALKER and LEVAL, Circuit Judges, and STANTON, District Judge.[1]
 PER CURIAM:
 
 
 1
 Plaintiffs, who are former pilots of Pan Am World Airways, Inc., appeal the summary dismissal of their claims under the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq. ("ADEA"). The pilots contend that when the defendant Delta Air Lines, Inc. took over the faltering Pan Am shuttle Delta's hiring selection of Pan Am pilots was age biased. The United States District Court for the Eastern District of New York (Jack B. Weinstein, Judge ) granted summary judgment to defendants, finding that, after two years of discovery, there was no showing that Delta practiced age discrimination.[2]
 
 
 2
 The plaintiffs were all aged 55 and older at the time of the shuttle transfer. They allege that, in hiring shuttle pilots from Pan Am, Delta used a seniority system that disadvantaged senior pilots and that it deliberately withheld seniority information in order to discourage older pilots from qualifying for the shuttle jobs. Plaintiffs also claim that Judge Weinstein should have recused himself from their case because his previous decisions evidence age bias. We find no basis for recusal and agree with Judge Weinstein that the record before the district court raised no genuine factual issue of discrimination on Delta's part. We therefore affirm.
 
 
 3
 The essential underlying facts are as follows. In early 1991, Pan Am filed for bankruptcy. On July 27, 1991, Pan Am and Delta entered into an Asset Purchase Agreement ("APA"), through which Pan Am sold to Delta certain assets, including Pan Am's shuttle routes and the Airbus A-310 and Boeing 727 aircraft used on those routes. Under the terms of the APA, Delta promised to hire at least 700 Pan Am pilots to fly the shuttle routes. The APA provided that those pilots "must be fully trained and currently qualified in the Boeing 727 or Airbus A-310 categories ... as of November 1, 1991" and would be hired in "seniority order by category." The APA further stipulated that "[a]ny training of [Pan Am's] pilots required to make them fully trained and currently qualified in the applicable Airbus A-310 or Boeing 727 categories ... shall be the responsibility of and undertaken at the expense of [Pan Am]." The Bankruptcy Court approved the APA in August 1991. Pan Am Corp. v. Delta Air Lines, Inc., 175 B.R. 438, 447 (S.D.N.Y.1994). Delta ultimately hired 774 former Pan Am pilots.
 
 
 4
 None of the plaintiff-pilots were qualified to fly the shuttle planes as of November 1991. They allege, however, that their lack of qualification was the result of the discriminatory way the shuttle jobs, and the necessary training, were offered. They allege that the seniority system adopted under the APA for the shuttle jobs and the manner in which information about that system was provided were calculated to discourage older pilots from switching from Pan Am to Delta. Delta explains that, as required by the APA, Pan Am pilots who were qualified to fly the A-310s and 727s as of November 1 were hired in the order of their overall seniority as ranked by Pan Am. Plaintiffs, however, allege that while the seniority system used may be clear now, at the time Pan Am pilots had to decide whether to retrain, Delta deliberately fostered confusion about how seniority would be calculated under the APA in order to discourage senior, older, Pan Am pilots from transferring to Delta.
 
 
 5
 According to plaintiffs, pilots were asked to make snap decisions that would affect their futures without information about how the choice to move to Delta would affect salary, seniority status, and retirement benefits, and with the understanding that acceptance of the training would involve forfeiture of the chance for continued employment with Pan Am. There is no evidence that younger pilots were offered training in any more congenial manner. Plaintiffs argue, however, that because older, more senior, pilots had more to lose, they would be unlikely to make the jump, which was the effect Delta hoped to produce.
 
 
 6
 Plaintiffs maintain that Pan Am pilots should have been hired according to "simple system-wide seniority," the method advocated by the pilots' union after the APA was signed. Under this system, pilots would have been eligible for hiring strictly on the basis of their total seniority with Pan Am without regard to their qualification to fly the Airbus and 727 airplanes Delta was taking over. According to plaintiffs, hiring on an overall seniority basis would have been a rational decision, because pilots are routinely retrained on different aircraft and the training needed by most of the senior pilots was minimal, since the planes they flew were larger and more complicated than the shuttle planes.
 
 
 7
 Under the ADEA, once plaintiffs have satisfied the minimal requirements of the prima facie case and the defendant has articulated a non-discriminatory reason for the challenged action, plaintiffs must prove the real reason for the challenged action was age. See Woroski v. Nashua Corp., 31 F.3d 105, 108 (2d Cir.1994). To defeat a properly supported motion for summary judgment in an age discrimination case, plaintiffs must "show that there is a material issue of fact as to whether (1) the employer's asserted reason for [the challenged action] is false or unworthy of belief and (2) more likely than not the employee's age was the real reason." Id. at 108-09.
 
 
 8
 Plaintiffs contend that Delta's real reason for rejecting overall seniority and instituting the seniority plan provided by the APA (and the reason plaintiffs allegedly did not receive clear information about that plan) was age bias. Delta, however, has offered unrebutted age-neutral explanations for its decision to reject the "system-wide seniority transfer" proposal promoted by plaintiffs. First, Delta asserts that it was reasonably concerned to hire a pilot force capable of immediately staffing the shuttle at the point that Delta took it over, which naturally entailed hiring pilots who were currently qualified to fly those planes. Moreover, Delta asserts, and plaintiffs have not effectively contradicted, that the use of system-wide seniority, irrespective of qualification for the equipment, would have required Delta to hire more pilots than it needed.
 
 
 9
 Plaintiffs seek to rebut Delta's age-neutral proofs by pointing to a variety of unconnected fragments of evidence in which Delta personnel might be understood to be making reference to age. None of the statements cited by plaintiffs reflect any age-based stereotype or belief that older pilots are less competent than younger ones. Instead, these references appear in the context of efficiency concerns raised by the Federal Aviation Administration's rule that commercial pilots cannot fly passenger jets past age 60. See 14 C.F.R. § 121.383(c).
 
 
 10
 At most, some of the statements suggest a concern about the economics of hiring pilots who were approaching the mandatory retirement age. The evidence might support an inference that Delta was reluctant to hire pilots who would shortly be disqualified from piloting and might begin drawing pension benefits. Under Hazen Paper Co. v. Biggins, 507 U.S. 604, 611-12, 113 S.Ct. 1701, 1706-07, 123 L.Ed.2d 338 (1993), an employer's concern about the economic consequences of employment decisions does not constitute age discrimination under the ADEA, even though there may be a correlation with age. Hazen made clear that employment decisions driven by factors that are empirically intertwined with age are not discriminatory so long as they are motivated by "some feature other than the employee's age." Id. at 609, 113 S.Ct. at 1705. Thus, decisions motivated by economic concerns do not violate the ADEA.
 
 
 11
 The concern expressed in the comments plaintiffs cite is the inefficiency and expense of hiring large numbers of pilots on the verge of mandatory retirement. Hazen left open the question whether an employment action based on an employee's retirement status might violate the ADEA if that retirement status was a direct function of age (rather than years of service). Id. at 613, 113 S.Ct. at 1707-08. Because the Pan Am pilots were subject to a mandatory retirement age, their case is arguably beyond Hazen 's narrow holding. We conclude, nonetheless, that Delta's concerns about the economics of hiring pilots approaching mandatory retirement were not discriminatory within the meaning of the ADEA, even though their retirement was required by law at a specified age, and not determined by years of service or some other yardstick. "Congress' promulgation of the ADEA was prompted by its concern that older workers were being deprived of employment on the basis of inaccurate and stigmatizing stereotypes." Id. at 610, 113 S.Ct. at 1706. To the extent the comments cited by plaintiffs implicate age at all, they express considerations of the business effects of the federally mandated retirement age, not assumptions about employees' abilities based on their age. On the reasoning of Hazen, considering and acting on such factors is not age discrimination.
 
 
 12
 Plaintiffs also claim that Delta's hiring plan was discriminatory, even without ageist intent, because of its "disparate impact" on Pan Am pilots aged 55 and over. Although the Supreme Court has never decided whether a disparate impact theory of liability is available under the ADEA, Hazen, 507 U.S. at 610, 113 S.Ct. at 1701, in our circuit, we have recognized such an action. District Council 37 v. New York City Dep't of Parks and Recreation, 113 F.3d 347, 351 (2d Cir.1997), citing Maresco v. Evans Chemetics, Div. of W.R. Grace & Co., 964 F.2d 106, 115 (2d Cir.1992). We have held, however, that it must allege a disparate impact on the entire protected group, i.e., workers aged 40 and over. Lowe v. Commack Union Free Sch. Dist., 886 F.2d 1364, 1372-73 (2d Cir.1989), cert. denied, 494 U.S. 1026, 110 S.Ct. 1470, 108 L.Ed.2d 608 (1990). Plaintiffs acknowledge that 94.1% of the pilots Delta hired were aged 40 and older and that the hiring scheme had no negative impact on the overall group of Pan Am pilots aged 40 and older. Under Lowe, then, plaintiffs' disparate impact claim cannot survive.
 
 
 13
 Plaintiffs' other asserted bases for finding age discrimination are strained and without merit. Judge Weinstein was correct to dismiss them on the motion for summary judgment. See Woroski, 31 F.3d at 109-10, ("[S]ome evidence is not sufficient to withstand a properly supported motion for summary judgment; a plaintiff opposing such a motion must produce sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not the employee's age was the real reason" for the challenged action.). Plaintiffs are correct that it is theoretically possible that in negotiating the APA, Delta could have exacted from Pan Am a promise to train and send only younger pilots in preference to older ones, giving rise to an ADEA claim against Delta. To the extent that the district judge relied upon the bankruptcy court's approval of the contract as a reason to exonerate Delta of any discrimination liability, such reliance appears misplaced. Nevertheless plaintiffs have brought insufficient evidence to sustain a reasonable inference of discrimination on Delta's part in its negotiation of the contract's terms.
 
 
 14
 Finally, plaintiffs argue that Judge Weinstein should have recused himself because his statements while trying other ADEA cases indicate that he harbors age bias. The Supreme Court has cautioned that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky v. United States, 510 U.S. 540, 555, 114 S.Ct. 1147, 1157, 127 L.Ed.2d 474 (1994). In any event, we find no indication in plaintiffs' submissions of any bias on Judge Weinstein's part.
 
 
 15
 In summary, we agree with the core of the district court's holding that plaintiffs have produced insufficient evidence to give rise to a material issue of fact regarding age discrimination. The judgment is affirmed.
 
 
 
 [1]
 The Honorable Louis L. Stanton, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [2]
 The pilots raise no substantive claim against the other named defendant, Air Line Pilots Association (the pilots' union). According to the complaint, the union was joined as a party because of its "interest in the subject matter of this action, and in order that complete and effective disposition of the Plaintiff's claims can be made herein." See Fed.R.Civ.P. 19(a)