229 F.3d 831 (9th Cir. 2000)
 JOSEPH KATZ; ROGER MOORE, on behalf of themselves and others similarly situated, Plaintiffs-Appellants,
v.
THE REGENTS OF THE UNIVERSITY OF CALIFORNIA; LAWRENCE LIVERMORE NATIONAL LABORATORY; ERNEST ORLANDO LAWRENCE BERKELEY NATIONAL LABORATORY, Defendants-Appellees.
 No. 99-15384
 U.S. Court of Appeals for the Ninth Circuit
 Argued and Submitted June 15, 2000
Filed October 25, 2000
 
 [Copyrighted Material Omitted]
 Gary L. Olimpia and David J. Rude, Olimpia, Whelan & Lively, San Jose, California, for the plaintiffs-appellants.
 W. Daniel Clinton, Hanson, Bridgett, Marcus, Vlahos & Rudy, LLP, San Francisco, California, for the defendantsappellees.
 Appeal from the United States District Court for the Northern District of California. Charles R. Breyer, District Judge, Presiding. D.C. No. CV-96-04108-CRB
 Before: Mary M. Schroeder, Michael Daly Hawkins and Raymond C. Fisher, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 This age discrimination case is brought under both the Age Discrimination in Employment Act (ADEA), 29 U.S.C. ' 621 et seq. , and the California Fair Employment and Housing Act (FEHA), Cal. Gov't Code ' 12941 et seq. It challenges the State of California's offer of a new early retirement incentive program to members of one retirement plan, whose average age was 55, and not to members of another retirement plan, whose average age was 60. Plaintiffs appeal the judgment in favor of defendants and raise, for the first time in a motion to dismiss the appeal, a threshold challenge to the district court's jurisdiction over the suit in light of the Supreme Court's holding in Kimel v. Florida Bd. of Regents, 528 U.S.62, 120 S. Ct. 631 (2000), that the states have Eleventh Amendment immunity from suits under the ADEA.
 
 
 2
 The case is unusual, for it is the state that asserts that it has waived its immunity and the plaintiffs who assert that the state has not. We agree with the state that it has waived its immunity by consenting to the prosecution of this case through trial and by expressly waiving any Eleventh Amendment defense in this case. On the merits, we affirm the district court's judgment dismissing as a matter of law the plaintiffs' disparate impact claim. Plaintiffs cannot prevail on that claim because any disparity in the impact of the state's decision was not on account of age but on account of retirement plan membership. We also affirm the court's entry of judgment following the jury's verdict in favor of the defendants on plaintiffs' disparate treatment claim. There was no error in the conduct of the trial.
 
 BACKGROUND
 
 3
 Pursuant to a contract with the United States Department of Energy, the University of California manages the work of the Lawrence Livermore National Laboratory, the Lawrence Berkeley National Laboratory, and the Los Alamos National Laboratory. Prior to 1961, the employees of these national laboratories were participants in the Public Employees Retirement System (PERS), a statewide retirement system administered by the State of California. Beginning in 1961, however, the University of California Retirement Plan (UCRP) was offered to new employees, and no other lab employees became members of PERS.
 
 
 4
 In 1993, pressure to downsize the laboratories resulted in the creation of a voluntary early retirement incentive program, known as VERIP III, for UCRP members. To be eligible for the program, employees had to be at least 50 years old with at least five years of service. By the time VERIP III was offered, the population of eligible UCRP members numbered approximately 4,425, while the number of eligible PERS members was approximately 438. The demographic analyses conducted by the University as part of its cost analysis revealed that the average age of UCRP members eligible for VERIP III was 55, with an average of 18.7 years of service, while the average age of potentially eligible PERS members was 60.51 years, with an average of 34.19 years of service.
 
 
 5
 The costs of offering VERIP III to UCRP members were covered by surplus funds in the UCRP program. The estimated cost of offering a companion to VERIP III to PERS members was approximately $30 million. Although the University considered offering to PERS members a program equivalent to VERIP III, the President of the University of California announced on August 3, 1994 that VERIP III would not be extended to PERS members.
 
 
 6
 Plaintiffs, members of the PERS program, brought this suit in federal district court on November 14, 1996, setting forth disparate impact and treatment age discrimination claims under the ADEA and FEHA. The district court denied the University's motions to dismiss and for summary judgment, and eventually certified the case as a class action. Just prior to trial, on January 20, 1999, the district court held as a matter of law that plaintiffs could not establish a prima facie case of disparate impact age discrimination and precluded plaintiffs' counsel from referring to that claim during trial. Also prior to trial, the district court granted the University's motion in limine to preclude plaintiffs from presenting evidence that the University could have allowed plaintiffs to transfer from PERS to UCRP in order to participate in VERIP III. At the end of the trial, the jury reached a unanimous verdict in favor of the University. This appeal followed.
 
 WAIVER OF IMMUNITY
 
 7
 As a threshold matter, plaintiffs now contend that this case must be dismissed in light of Kimel, in which the Supreme Court held that Congress' attempt to extend the ADEA to the states by abrogating their Eleventh Amendment immunity was an inappropriate exercise of Congress' lawmaking authority under 5 of the Fourteenth Amendment. Although the ADEA is a proper exercise of Congress' Article I Commerce Clause power, the Court held that such power does not include the ability to subject the states to suits by private individuals. See Kimel , 120 S. Ct. at 643 (citing Seminole Tribe of Fla. v. Florida, 517 U.S. 44, 72-73 (1996)). Before the district court, the state had asserted the Eleventh Amendment as a defense. The Court therefore dismissed Kimel's suit.
 
 
 8
 Plaintiffs assert that the Supreme Court's decision in Kimel eliminated the basis for federal subject matter jurisdiction over this suit by striking down the provision in the ADEA conferring jurisdiction over age discrimination suits against state agencies. We disagree. Nothing in Kimel suggests that the Court intended to remove the statutory jurisdictional basis for age discrimination suits against a state or its agencies. It held that on account of Eleventh Amendment immunity the states can not be compelled to submit to the jurisdiction of the federal courts in such suits.
 
 
 9
 California may therefore waive its Eleventh Amendment immunity on a case-by-case basis, as we hold it has here, and subject itself to suit under the ADEA. The Eleventh Amendment was never asserted as a defense by the University before the district court, and the state has submitted a declaration of the general counsel for the Regents of the University of California which purports to waive the University's Eleventh Amendment immunity for purposes of this litigation. As we recently noted, "The Eleventh Amendment . . . does not automatically destroy original jurisdiction. Rather, the Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so. The State can waive the defense. Nor need a court raise the defect on its own. Unless the State raises the matter, a court can ignore it." Hill v. Blind Ind. & Services of Maryland, 179 F.3d 754, 760 (9th Cir. 1999) (quoting Wisconsin Dep't of Corrections v. Schacht , 524 U.S. 381, 389 (1998)). This conclusion is consistent with prior Supreme Court case law. See, e.g., Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 241 (1985); Patsy v. Board of Regents of Fla., 457 U.S. 496, 515 n.19 (1982); Gardner v. New Jersey, 329 U.S. 565, 574 (1947). Here, since the state has expressly disavowed Eleventh Amendment immunity as a defense, thereby unequivocally waiving it, federal jurisdiction exists and plaintiffs' motion to dismiss the appeal must be denied. See Atascadero, 473 U.S. at 241 (state immune absent an unequivocal waiver specifically applicable to federal jurisdiction).
 
 DISPARATE IMPACT CLAIM
 
 10
 The ADEA prohibits employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. 623(a)(1). Although the Supreme Court has specifically left the question open, see Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993), in this circuit, disparate impact claims are cognizable under the ADEA. See EEOC v. Local 350, Plumbers and Pipefitters, 998 F.2d 641, 648 n.2 (9th Cir. 1993); EEOC v. Borden's Inc. , 724 F.2d 1390 (9th Cir. 1984). But see Mullin v. Raytheon Co. , 164 F.3d 696, 703 (1st Cir. 1999) (ADEA does not provide cause of action for disparate impact); Ellis v. United Airlines, Inc. , 73 F.3d 999, 1007 (10th Cir. 1996) (same); EEOC v. Francis W. Parker School, 41 F.3d 1073, 1076-78 (7th Cir. 1994) (same).
 
 
 11
 Generally, in order to prevail on a disparate impact claim of age discrimination, a plaintiff must prove that a challenged employment policy or practice, while facially neutral, has a disparate impact on certain employees "because of their membership in a protected group," Watson v. Fort Worth Bank and Trust , 487 U.S. 977, 994 (1988), which under the ADEA consists of "individuals who are at least 40 years of age." 29 U.S.C. 631(a). To state a prima facie case under a disparate impact theory, a plaintiff must demonstrate "(1) the occurrence of certain outwardly neutral employment practices, and (2) a significantly adverse or disproportionate impact on persons of a particular [age] produced by the employer's facially neutral acts or practices." Palmer v. United States , 794 F.2d 534, 538 (9th Cir. 1986) (brackets in original). We apply the same analytical framework to claims brought under FEHA. See Godwin v. Hunt Wesson, Inc., 150 F.3d 1217, 1219 (9th Cir. 1998).
 
 
 12
 The district court dismissed plaintiffs' adverse impact claim just prior to trial, concluding that plaintiffs were "unable to set forth a substantial statistical disparity that would raise an inference of intentional discrimination, and . . . unable to demonstrate how the University's decision--absent discriminatory intent--could have harmed the plaintiffs because of age." Plaintiffs argue that the University's decision to offer VERIP III only to UCRP members had a disparate impact upon PERS members because (1) PERS members tended, on average, to be about 5 years older, and (2) it was increasingly likely that older employees would be members of the PERS program.
 
 
 13
 It should be noted that all the employees potentially eligible for VERIP III, whether members of PERS or UCRP, were within the class of persons protected by the ADEA. Although the Ninth Circuit has not expressly addressed the issue, some circuits have held that claims based on the adverse impact of a policy among sub-classes within a larger protected class are not cognizable. See, e.g. , EEOC v. McDonnell Douglas Corp., 191 F.3d 948 (8th Cir. 1999); Criley v. Delta Air Lines, Inc., 119 F.3d 102 (2d Cir. 1997). We need not reach that issue, however, because we hold that plaintiffs failed to demonstrate causation, which requires substantial statistical evidence sufficient to raise an inference that the disparate impact fell upon employees of a protected age group. See Watson , 487 U.S. at 994.
 
 
 14
 While the plaintiffs can certainly show that they were treated differently on the basis of their membership in the PERS program, their evidence demonstrates that only 238 of the 895 employees at the laboratories age 60 or over (roughly 27 percent) were adversely impacted by the University's decision. Given the legitimate reason advanced for the University's decision, the plaintiff's statistical evidence is insufficient to raise an inference that the disparate impact fell upon employees by virtue of their membership in a protected age group. See Rose v. Wells Fargo & Co., 902 F.2d 1417, 1424 (9th Cir. 1990) (concluding that plaintiff's statistical evidence was insufficient to raise inference of causation where other evidence demonstrated that workforce after employment action was applied was older than the workforce beforehand). As in Rose , the statistical evidence of disparate impact upon employees age 60 or over is minimal compared to the number of employees of that age group not adversely affected by the University's decision.
 
 
 15
 Plaintiffs rely most heavily on Arnett v. California PERS, 179 F.3d 690 (9th Cir. 1999), vacated in light of Kimel, 120 S. Ct. 930 (2000). In Arnett, former California state employees challenged the California Public Employees' Retirement Law's method of calculating disability benefits. Under Cal. Gov't Code 21417, employees who were injured on the job and retired with a disability were paid according to a formula that took into account "potential years of service" by subtracting an employee's age at hire from the presumed retirement age of 55. See id. at 693. As a result, an employee hired at age 35 would receive 40% of her final compensation while an employee hired at age 50 would receive only 10%. See id. at 695. We reversed the district court's dismissal of the plaintiffs' adverse impact claim, holding that "[h]aving alleged that the consequences of section 21417 fall more harshly on `those employees hired at age 40 and over,' and documenting the impact of the benefit calculations, the Employees adequately stated a disparate impact claim." Id. at 697.
 
 
 16
 In Arnett , however, the impact of the policy was directly related to an employee's age; the older an employee was at the time of hire, the less she received in disability benefits. No such direct nexus exists here. At best, plaintiffs have demonstrated only that the average age of the PERS members was 5 years older than the average age of eligible UCRP members, and plaintiffs concede that numerous UCRP employees older than the average PERS member were offered VERIP III. The factor that determines an employees' eligibility to participate in VERIP III is thus not an employee's age itself, but instead whether that employee is a member of UCRP. See Rose , 902 F.2d at 1425. Accordingly, plaintiffs failed to demonstrate the requisite causal link for a disparate impact claim, and the district court did not err by dismissing the claim prior to trial.
 
 EVIDENTIARY RULING
 
 17
 Prior to trial of plaintiffs' disparate treatment claim, the district court excluded evidence and argument that the University could have allowed plaintiffs to transfer to UCRP and participate in VERIP III. This issue was originally raised in a motion in limine by the University seeking to exclude evidence of available alternatives to the challenged policy or practice, including the possibility of transfer from PERS to UCRP. The district court granted the motion, concluding that allowing such transfers, without the PERS members having contributed to or participated in UCRP, would likely violate the California Constitution. After intervening law called into question the district court's conclusion that permitting transfers between programs would violate state law, and after plaintiffs' disparate impact claim had been dismissed, plaintiffs asserted that the transfer evidence was admissible with respect to their disparate treatment claim to demonstrate discriminatory intent. The district court concluded that because the University reasonably believed at the time it allegedly denied transfers into UCRP that state law prohibited such transfers, a jury could not reasonably infer that the University's failure to permit the transfers was evidence of discriminatory intent. Nonetheless, the court offered to allow plaintiffs to question a University representative outside the presence of the jury as an offer of proof. Plaintiffs declined to make such an offer.
 
 
 18
 The district court did not abuse its discretion by refusing to admit evidence regarding the possibility of transfer between programs. The thrust of plaintiffs' argument before the district court was that transfer from PERS to UCRP was possible at the time VERIP III was offered and that the University's failure to explore the possibility of transfer was evidence of discriminatory intent. Plaintiffs did not dispute the reasonableness of the University's belief in 1993 and 1994 that state law would prohibit transfer between the programs, and any subsequent change in the law had no bearing on that earlier belief. As argued by plaintiffs, the evidence would have shown only that at the time the University was informing members of the plaintiff class that transfer was impossible, they were acting on legal advice that was later shown to have been incorrect. Under these circumstances, the district court's conclusion that the jury could not reasonably infer a discriminatory motive on the part of the University through evidence of the possibility of transfer between programs was not an abuse of discretion. See Gilbrook v. City of Westminster, 177 F.3d 839, 858 (9th Cir.), cert. denied, 120 S. Ct. 614 (1999). Insofar as plaintiffs contend on appeal that they could have proven additional facts relevant to their disparate treatment claim, plaintiffs' failure to make an offer of proof-particularly once invited to do so by the district court-precludes consideration of those contentions. See Heyne v. Caruso , 69 F.3d 1475, 1481 (9th Cir. 1995).
 
 CONCLUSION
 
 19
 For the foregoing reasons, plaintiffs' motion to dismiss the appeal is DENIED. The district court's dismissal of plaintiffs' adverse impact claim and evidentiary ruling at trial are AFFIRMED.