Wanda L. ADAMS, Leo L. Floyd, et al., Plaintiffs, Counter-defendants, Appellants,

v.

FLORIDA POWER CORP., Florida Progress Corporation, Defendants, Counter-claimants, Appellees.

No. 99-15306.

United States Court of Appeals,

Eleventh Circuit.

July 5, 2001.

Appeal from the United States District Court for the Middle District of Florida.(No. 95-00123-CV-OC-10A), Wm. Terrell Hodges, Judge.

Before BIRCH, BARKETT and MAGILL[*], Circuit Judges.

BIRCH, Circuit Judge:

This case presents an issue of first impression in our circuit regarding whether a disparate impact theory of liability is available to plaintiffs suing for age discrimination under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.* The district court ruled as a matter of law that disparate impact claims cannot be brought under the ADEA. Because the question presents a controlling issue of law in the case, and the judge opined that there were substantial grounds for disagreement over his decision, he certified the question to us pursuant to 28 U.S.C. § 1292(b).[1] We exercise our discretion to take the case and AFFIRM.

I. BACKGROUND

Florida Power Corporation ("FPC") operated as a publicly-regulated electric utility monopoly until 1992, when Congress opened the industry to competition through the Energy Policy Act of 1992, 106 Stat. 2776 (1992). Florida Progress Corporation is its parent corporation. Wanda Adams and several other plaintiffs (the "Adams class") were terminated by FPC between 1992 and 1996, during a series of reorganizations the company states were necessary to maintain its competitiveness in the newly deregulated market. Members of the Adams class sued FPC and its parent corporation claiming, *inter alia,* that FPC

---

[*]Honorable Frank J. Magill, U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

[1]Our sister, in her concurring opinion, concludes that we overreach by deciding the question of whether disparate impact claims are cognizable under ADEA as a matter of law. She would find that the plaintiffs failed to adequately allege a disparate impact claim. This position is inconsistent with the posture of the case. The district court expressly made no findings of fact on the sufficiency of the allegations in the plaintiffs' complaint. Indeed, because the district court certified only the question of law to us, a "pronouncement in the abstract" is required.

discriminated against them because of their age, in violation of the ADEA.

In 1996, the district court conditionally certified a class of former FPC employees claiming age discrimination. In August 1999, the district court decertified the class and ruled as a matter of law that a disparate impact theory of liability is not available to plaintiffs bringing suit under the ADEA.[2] Because there is some conflict among the circuits and we had not yet ruled on the availability of disparate impact claims under the ADEA, the district court certified the question to us pursuant to 28 U.S.C. § 1292(b).[3] The court was careful to note that he made no findings of fact or assessment of whether the Adams class could produce evidence sufficient to state a claim for disparate impact. Accordingly, the sole question before us is whether, as a matter of law, disparate impact claims may be brought under the ADEA.

## II. DISCUSSION

We review the district court's interpretation of a statute *de novo*. *United States v. Prosperi,* 201 F.3d 1335, 1342 (11th Cir.2000). As with any question of statutory interpretation, we begin by examining the text to determine whether its meaning is clear. "In construing a statute we must begin, and often should end as well, with the language of the statute itself." *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1185 (11th Cir.1997). "Where the language Congress chose to express its intent is clear and unambiguous, that is as far as we go to ascertain its intent because we must presume that Congress said what it meant and meant what it said." *United States v. Steele,* 147 F.3d 1316, 1318 (11th Cir.1998) (en banc), *cert. denied,* 528 U.S. 933, 120 S.Ct. 335, 145 L.Ed.2d 261 (1999).

The language of the ADEA closely parallels that of Title VII. *See Lorillard v. Pons,* 434 U.S. 575, 584, 98 S.Ct. 866, 872, 55 L.Ed.2d 40 (1978) (noting that "the prohibitions of the ADEA were derived *in haec verba* from Title VII.") In fact, the sections forbidding discrimination are almost identical. *Compare* 29 U.S.C. § 623(a)(1) (ADEA) *with* 42 U.S.C. § 2000e-2(a)(1) (Title VII). The Supreme Court has held that

---

[2]The court also found that the plaintiffs' disparate treatment claims were not sufficiently similar to support proceeding as a class. Accordingly, the court held that the Adams class members would each have to pursue their individual remedies separately.

[3]The district court's Order of Certification states the following:

> [W]hether I am right or wrong in ruling that the disparate impact theory of liability is unavailable to these Plaintiffs is a critical issue that ought to be resolved with finality before the Court can reasonably proceed with the management of this litigation toward trial ... The controlling question of law is whether the "disparate impact" theory or method of proving liability is applicable to claims brought under the [ADEA].

R3-312, at 2-3 (internal citations omitted).

Title VII supports a cause of action for employment discrimination based on a disparate impact theory.[4] *See Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971).

Several circuits have relied on the holding in *Griggs* to find that, because the language of the ADEA parallels Title VII, disparate impact claims also should be allowed under the ADEA. *See Geller v. Markham,* 635 F.2d 1027, 1032 (2d Cir.1980); *Smith v. City of Des Moines,* 99 F.3d 1466, 1469-70 (8th Cir.1996); *E.E.O.C. v. Borden's, Inc.,* 724 F.2d 1390, 1394-95 (9th Cir.1984). In a case involving liquidated damages under the ADEA, the Supreme Court explicitly left open the question of "whether a disparate impact theory of liability is available under the ADEA." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 610, 113 S.Ct. 1701, 1706, 123 L.Ed.2d 338 (1993). The Second, Eighth, and Ninth Circuits have read *Hazen* literally and continue to allow disparate impact claims. *See Criley v. Delta Air Lines, Inc.,* 119 F.3d 102, 105 (2d Cir.1997) (per curiam); *Lewis v. Aerospace Cmty. Credit Union,* 114 F.3d 745, 750 (8th Cir.1997); *Frank v. United Airlines, Inc.,* 216 F.3d 845, 856 (9th Cir.2000); *E.E.O.C. v. Local 350,* 998 F.2d 641, 648 n. 2 (9th Cir.1993).

In contrast, the First, Third, Sixth, Seventh, and Tenth Circuits have questioned the viability of disparate impact claims under the ADEA post-*Hazen.*[5] *See Mullin v. Raytheon Co.,* 164 F.3d 696, 700-01 (1st Cir.), *cert. denied,* 528 U.S. 811, 120 S.Ct. 44, 145 L.Ed.2d 40 (1999); *E.E.O.C. v. Francis W. Parker School,* 41 F.3d 1073, 1076-77 (7th Cir.1994); *Ellis v. United Airlines, Inc.,* 73 F.3d 999, 1006-07 (10th Cir.1996); *DiBiase v. SmithKline Beecham Corp.,* 48 F.3d 719, 732 (3d Cir.1995); *Lyon v. Ohio Educ. Ass'n and Prof'l Staff Union,* 53 F.3d 135, 139 n. 5 (6th Cir.1995). These cases rely on language in *Hazen* and other factors that suggest that disparate impact claims are not viable under the ADEA.

First, courts that question the viability of a disparate impact claim under the ADEA note that the text of the ADEA differs from Title VII in an important respect. Section 623(f)(1) of the ADEA explicitly provides that an employer may "take any action otherwise prohibited ... where the differentiation is based on reasonable factors other than age." 29 U.S.C. § 623(f)(1). The First Circuit has reasoned that

if the exception contained in section 623(f)(1) is not understood to preclude disparate impact liability,

---

[4]A disparate impact claim is one that "involve[s] employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another and cannot be justified by business necessity." *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 609, 113 S.Ct. 1701, 1705, 123 L.Ed.2d 338 (1993) (quoting *Teamsters v. United States,* 431 U.S. 324, 335-36 n. 15, 97 S.Ct. 1843, 1855 n. 15, 52 L.Ed.2d 396 (1977)).

[5]The Fourth, Fifth, and D.C. Circuits have not addressed this issue.

it becomes nothing more than a bromide to the effect that "only age discrimination is age discrimination." Such a circular construction would fly in the teeth of the well-settled canon [of statutory construction].

*Mullin,* 164 F.3d at 702.

In addition, the language of § 623(f)(1) is similar to language found in the Equal Pay Act. Section 206(d)(1) of the Equal Pay Act provides that wage discrimination on the basis of gender is prohibited, unless the wage "differential [is] based on any other factor other than sex." 29 U.S.C. § 206(d)(1)(iv). "The Supreme Court [has] interpreted section 206(d)(1) of the Equal Pay Act to preclude disparate impact claims." *Ellis,* 73 F.3d at 1008 (citing *County of Washington, Ore. v. Gunther,* 452 U.S. 161, 170-71, 101 S.Ct. 2242, 2248-49, 68 L.Ed.2d 751 (1981)); *Mullin,* 164 F.3d at 702 (drawing same comparison).[6] The text of the ADEA is sufficiently distinguishable from Title VII as to raise doubts about extending the disparate impact theory of liability to ADEA cases.

Turning to the legislative history, the *Mullin* and *Ellis* courts note that the ADEA was enacted after the Secretary of Labor issued a report on age discrimination. *Mullin,* 164 F.3d at 702-03; *Ellis,* 73 F.3d at 1008. The report, entitled *The Older American Worker: Age Discrimination in Employment* (1965), recommended that Congress ban arbitrary discrimination, such as disparate treatment based on stereotypical perceptions of the elderly, but that factors affecting older workers, such as policies with disparate impact, be addressed in alternative ways. *Ellis,* 73 F.3d at 1008. Thus, the history of the ADEA differs from the legislative history of Title VII, which the Supreme Court in *Griggs* relied on to find a cause of action for disparate impact. *See Griggs,* 401 U.S. at 432, 91 S.Ct. at 854 (discussing the history of amendments to the bill and noting that for Title VII, Congress specifically "placed on the employer the burden of showing that any given requirement must have a manifest relationship to the employment in question.").

Finally, while the *Hazen* Court left open the question of whether a disparate impact claim can be brought under the ADEA, language in the opinion suggests that it cannot. First, the Court noted that "[d]isparate treatment ... captures the essence of what Congress sought to prohibit in the ADEA." *Hazen,* 507 U.S. at 610, 113 S.Ct. at 1706. In addition, the Court reiterated that, in making employment decisions, the

---

[6]We note that the ADEA requires that the "other factor" be a reasonable one, while the Equal Pay Act finds "any other factor" acceptable. *Compare* 29 U.S.C. § 623(f)(1) *with* 29 U.S.C. § 206(d)(1)(iv). It could be argued that this difference distinguishes the ADEA from the Equal Pay Act, and supports the inference that the reasonableness requirement refers to the business necessity justification that, in Title VII cases, can be used to defend an employment qualification that has a disparate impact on employees in the protected class. In light of the differences between the ADEA and Title VII discussed herein, we decline to draw such an inference.

use of factors correlated with age, such as pension status, did not rely on "inaccurate and stigmatizing stereotypes" and was acceptable. *Id.* at 611, 113 S.Ct. at 1706-07. That position is inconsistent with the viability of a disparate impact theory of liability, which requires no demonstration of intent, but relies instead on the very correlation between the factor used and the age of those employees harmed by the employment decision to prove liability.

### III. CONCLUSION

The Second, Eighth, and Ninth Circuits allow disparate impact claims under the ADEA. The First, Third, Sixth, Seventh, and Tenth do not. We find the reasoning of the Tenth Circuit in *Ellis* and the First Circuit in *Mullin* persuasive. Accordingly, we find that disparate impact claims may not be brought under the ADEA, and AFFIRM.

BARKETT, Circuit Judge, specially concurring:

I would affirm the district court's ruling in this case, but for reasons other than the one relied upon by the district court.[1] I do not believe the complaint here pleads a disparate impact claim sufficient to qualify for class certification. Thus, because I find that plaintiffs have sufficiently alleged only that they suffered disparate treatment, and the district court's denial of certification on the disparate treatment claim is not at issue on this appeal, I believe it is unnecessary and premature to address the question of whether disparate impact claims are cognizable under the ADEA. I think it especially unwise because this question does not lend itself to a pronouncement in the abstract.

The decision as to whether a disparate impact claim is available in an age discrimination case should be made on a case specific basis rather than on an overreliance on decontextualized language from the Supreme Court's decision in *Hazen Paper Co. v. Biggins,* 507 U.S. 604, 113 S.Ct. 1701, 123 L.Ed.2d 338 (1993). The purposes of the ADEA, the Supreme Court's treatment of the issue in *Hazen Paper,* and consideration of the various views of our sister courts, lead me to conclude that disparate impact can be pled and proved in an appropriate case under the ADEA, and that it cannot be said as a matter of law that this theory of recovery can never be used in an age discrimination case.

First of all, the purpose of the ADEA, like the purpose of Title VII and the ADA, is to eradicate

---

[1]We may affirm the district court's decision for reasons different than those stated by the district court. *See Sec. & Exch. Comm'n v. Chenery Corp.,* 318 U.S. 80, 88, 63 S.Ct. 454, 87 L.Ed. 626 (1943) (stating that the decision of the lower court must be affirmed if the result is correct even though the lower court relied upon a wrong ground or gave a wrong reason); *see also Turlington v. Atlanta Gas Light Co.,* 135 F.3d 1428, 1434 (11th Cir.1998).

employment discrimination based on the stigmatizing stereotypes of age, race, gender or disability. Disparate impact claims provide an avenue for members of protected classes to prove that discrimination occurred in the workplace when proof of motive is difficult or unavailable. Beginning with *Griggs v. Duke Power Co.,* 401 U.S. 424, 431, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court recognized that although discriminatory intent could be hidden, even from the decisionmaker himself, its effects in the workplace could not. Thus, Title VII "proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation." *Id.* at 431, 91 S.Ct. 849. Accordingly, the Supreme Court interpreted Title VII to permit a member of a protected group to challenge facially neutral employment practices that perpetuate inequality by disproportionately burdening a protected class.

However, pleading a disparate impact case only gets you into the courthouse. An employer in every statutory context can defend a disparate impact case by citing a legitimate business necessity for the neutral policy at issue.[2] Thus, in those cases where it can be shown that the decision causing the disparate impact was based on business necessity, the claim will be defeated.[3] Disparate impact is not an easy theory to plead and prove in any context. I believe that it is probably a more difficult claim to make under the ADEA than in a race or gender context because the impact of neutral policies which fall disproportionately on class members protected by the ADEA can be proven to be related to legitimate business reasons in more instances than those which might impact other protected groups. *See Hazen Paper,* 507 U.S. at 610-11, 113 S.Ct. 1701.

The majority, however, concludes that disparate impact claims are simply not viable because Section 623(f)(1) of the ADEA *specifically* exempts a decision based on factors other than age, notwithstanding its similarity to Title VII. 29 U.S.C. § 623(f)(1). But, as noted, in every statutory discrimination case, a decision based upon legitimate business necessity will never support a claim for liability. *Griggs* itself recognized and repeatedly emphasized that disparate impact is a basis for relief only if the practice in question is not founded

---

[2]Title VII requires an employer to demonstrate that the challenged practice is a job related business necessity. 42 U.S.C. § 2000e-2(k)(1)(A)(i). The ADA defines discrimination as including the use of "selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities" unless such criteria are "shown to be job-related for the position in question and [are] consistent with business necessity." 42 U.S.C. § 12112(b)(6).

[3]*See, e.g., Belk v. Southwestern Bell Telephone Co.,* 194 F.3d 946, 951 (8th Cir.1999) (employer in ADA suit could raise business necessity defense to plaintiff's claim that employer's physical performance test has a disparate impact); *Davis v. City of Dallas,* 777 F.2d 205, 208 (5th Cir.1985) (finding that city's requirement that applicants for police officer must have completed 45 semester hours of college credit with at least C average at accredited college or university, must not have history of recent or excessive marijuana use, and must not have been convicted of more than three hazardous traffic violations in preceding 12 months, were job related).

on "business necessity," or lacks "a manifest relationship to the employment." *Id.* at 431, 91 S.Ct. 849. Section 623(f)(1) of the ADEA adds nothing new. Therefore, Section 623(f)(1) of the ADEA should not be interpreted as anything more than a statutory description of the business necessity defense.

In fact, the EEOC interpretive guidelines, which are entitled to judicial deference,[4] suggest that the "reasonable factors" defense in the ADEA works in tandem with the business necessity defense in the disparate impact analysis. These guidelines indicate that an employer may raise a "reasonable factors" defense to justify employment practices that "have an adverse impact on individuals within the protected age group." *See* 29 C.F.R. § 1625.7(d) (1999).[5] In light of the parallels between the substantive provisions of the ADEA and Title VII, and in light of the fact that Congress has amended the ADEA several times but has never explicitly excluded disparate impact claims,[6] a reasonable interpretation of Section 623(f)(1) is that it

---

[4]*Edwards v. Shalala,* 64 F.3d 601, 606 (11th Cir.1995) (" 'An agency's interpretation of an ambiguous provision within a statute it is authorized to implement is entitled to judicial deference.' ") (quoting *Jones v. Runyon,* 32 F.3d 1454, 1457-58 (10th Cir.1994)); *see also Pauley v. BethEnergy Mines, Inc.,* 501 U.S. 680, 696-98, 111 S.Ct. 2524, 115 L.Ed.2d 604 (1991); *Chevron USA, Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 866, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

[5]EEOC guidelines interpret the "reasonable factor other than age" defense as limited only to factors justifiable as a "business necessity":

> (d) When an employment practice, including a test, is claimed as a basis for different treatment of employees or applicants for employment on the grounds that it is a "factor other than" age, and such a practice has an adverse impact on individuals within the protected age group, it can only be justified as a business necessity. Tests which are asserted as "reasonable factors other than age" will be scrutinized in accordance with the standards set forth at Part 1607 of this Title.
>
> (e) When the exception of "a reasonable factor other than age" is raised against an individual claim of discriminatory treatment, the employer bears the burden of showing that the "reasonable factor other than age" exists factually.
>
> (f) A differentiation based on the average cost of employing older employees as a group is unlawful except with respect to employee benefit plants which qualify for the section 4(f)(2) exception to the Act.

29 C.F.R. § 1625.7 (2000).

[6]After the *Griggs* decision, several courts extended disparate impact analysis to the ADEA. *See, e.g., Leftwich v. Harris-Stowe State College,* 702 F.2d 686, 690 (8th Cir.1983); *Geller v. Markham,* 635 F.2d 1027 (2nd Cir.1980); *United Independent Flight Officers, Inc. v. United Air Lines, Inc.,* 572 F.Supp. 1494, 1505 (N.D.Ill.1983). Congress has amended the ADEA several times since *Griggs. See e.g.,* Age Discrimination in Employment Amendments of 1986, Pub.L. No. 99-592, 100 Stat. 3342 (1986); Omnibus Budget Reconciliation Act of 1986, Pub.L. No. 99-509, § 9201, 100 Stat. 1874, 1973-75 (1986); Consolidated Omnibus Budget Reconciliation Act of 1985, Pub.L. No. 99-272, § 9201(b), 100 Stat. 82, 171 (1986); Older Americans Act Amendments of 1984, Pub.L. No. 98-459, § 802, 98 Stat. 1792 (1984). None of the amendments have limited or prohibited disparate impact analysis. *See also EEOC v. Governor Mifflin Sch. Dist.,* 623 F.Supp. 734, 740-41 (E.D.Pa.1985) (analyzing amendments to the

codifies the business necessity exception to disparate impact claims.

I am unpersuaded by the majority's conclusion that the the Supreme Court's determination that a similar provision in the Equal Pay Act ("EPA") precludes disparate impact claims. *See County of Washington, Ore. v. Gunther,* 452 U.S. 161, 170-71, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981). There are several problems with analogizing from the EPA to the ADEA. First, this case concerns the substantive provisions of the ADEA, which have been recognized to share common substantive provisions as Title VII, and not the remedial provisions of the ADEA which are similar to the remedial provisions of the EPA. *Wallace v. Dunn Construction Co.,* 62 F.3d 374, 378 (11th Cir.1995). Second, Section 206(d)(1) of the EPA permits discrepancies in wages paid to male and female workers for "any other factors other than sex." 29 U.S.C. § 206(d)(1)(iv). The EPA thus merely requires the employer to provide a neutral explanation for any disparity in pay. The EPA's broad defense for employers ensures that the Act targets only intentional purposeful discrimination.[7] In contrast, under section 623(f)(1) of the ADEA, the employer must demonstrate the *reasonableness* of the neutral factor. The ADEA's narrow limitation of liability ensures that the Act reaches all arbitrary age discrimination.

Furthermore, I disagree with the majority's interpretation of *Hazen Paper* as precluding disparate impact claims under the ADEA. The Court in *Hazen Paper* took great care to say explicitly that that decision should not be read to address a disparate impact case: "[W]e have never decided whether a disparate impact theory of liability is available under the ADEA, and we need not do so here." *Hazen Paper,* 507 U.S. at 610, 113 S.Ct. 1701. In *Hazen Paper,* the neutral policy at issue was the termination of an employee who was close to vesting under his pension plan. As the Court recognized, the policy could have affected "older" and "younger" workers alike. The crucial fact underlying the Supreme Court's decision in *Hazen Paper* was that Hazen Paper decided to fire the plaintiff on the basis of his pension status which, under the company's policy,

ADEA and finding no prohibition against disparate impact claims). "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." *Lorillard v. Pons,* 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978).

[7]*See Gunther,* 452 U.S. at 170, 101 S.Ct. 2242 (noting that in comparison to Title VII, which permits disparate impact claims, the Equal Pay Act "was designed differently, to confine the application of the Act to wage differentials attributable to sex discrimination.... Equal Pay Act litigation, therefore, has been structured to permit employers to defend against charges of discrimination where their pay differentials are based on a bona fide use of 'other factors other than sex.' "); *Varner v. Illinois State University,* 226 F.3d 927, 934 (7th Cir.2000) ("By providing a broad exemption from liability under the Equal Pay Act for any employer who can provide a neutral explanation for a disparity in pay, Congress has effectively targeted employers who intentionally discriminate against women.").

was based on years of service, not age. The Court explained that "an employee's age is analytically distinct from his years of service." *Id.* at 611, 113 S.Ct. 1701.

> An employee who is younger than 40, and therefore outside the class of older workers as defined by the ADEA, see 29 U.S.C. § 631(a), may have worked for a particular employer his entire career, while an older worker may have been newly hired. Because age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily "age based."

*Id.* Accordingly, the claimant could not prevail when he was fired on this basis, even though he was 62 years old. The Court held that the motivation to avoid the vesting of pension benefits was insufficient to state a disparate treatment claim under the ADEA because the evidence did not show that Hazen Paper's decision was based on the plaintiff's age. *Id.* ("When the employer's decision is wholly motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes disappears. This is true even if the motivating factor is correlated with age, as pension status typically is."). However, the Court also made clear that:

> We do not preclude the possibility that an employer who targets employees with a particular pension status on the assumption that these employees are likely to be older thereby engages in age discrimination. Pension status may be a proxy for age, not in the sense that the ADEA makes the two factors equivalent, but in the sense that the employer may suppose a correlation between the two factors and act accordingly.

*Id.* at 612-13, 113 S.Ct. 1701 (citation omitted). Thus, the Court did not rule out the possibility that an employer's purported reliance on an age-proxy could reflect the type of "inaccurate and denigrating generalization about age" that the ADEA was designed to prohibit. *Id.* at 612, 113 S.Ct. 1701. For example, there is nothing in *Hazen Paper* that addresses a disparate impact challenge to an employer's insurance policy which might provide coverage for health problems affecting young employees, but exclude coverage for health problems affecting older employees (for example, a policy which covered braces but not dentures, or a policy generally covering progressive, neurodegenerative diseases except for Alzheimer's disease). *See also Arnett v. California Public Employees Retirement System,* 179 F.3d 690 (9th Cir.1999), *vacated and remanded on other grounds,* 528 U.S. 1111, 120 S.Ct. 930, 145 L.Ed.2d 807 (2000) (plaintiffs' claim that employer's disability benefits program which discriminated on the basis of potential years of service, rather than actual years of service, adversely affected older workers stated a valid claim of disparate impact under the ADEA). Furthermore, the Court explicitly stated that it did not consider a situation in which the employee's pension status is based on *age,* rather than years of service:

> [W]e do not consider the special case where an employee is about to vest in pension benefits as a result of his age, rather than years of service and the employer fires the employee in order to prevent vesting.

*Hazen Paper,* 507 U.S. at 613 (citation omitted).

Finally, the majority is of the view that the legislative history of the ADEA suggests it was not enacted to address disparate impact claims, citing the report commissioned from the Secretary of Labor, *The Older American Worker: Age Discrimination in Employment* (1965). The report recommended that Congress prohibit "arbitrary discrimination," but that factors which "affect older workers" be addressed through programmatic measures to improve opportunities for older workers. *Id.* at 21-25. That report differentiated between what it termed "arbitrary discrimination" based on age and problems resulting from factors that "affect older workers more strongly, as a group, than they do younger employees." *Id.* at 5, 11. The majority concludes that this precludes disparate impact claims because these are claims that only address "factors that affect older workers more strongly," not arbitrary discrimination. But this begs the question. The very question disparate impact analysis seeks to answer is whether the challenged policy that disproportionately impacts older workers is derived from a reasonable business judgment or whether the policy is the result of arbitrary discrimination. Claimants should have the opportunity to prove it when it is the latter.